H. O. Zeigler *et ux. v.* Lexington Compress & Oil Mill Co.

[63 South. 220.]

1. Fixtures. *Trade fixtures. Lease. Time for removal by tenant.*

Where a husband and wife occupied a tract of land as a home-stead and the husband, the wife not joining, leased a part of the land for two years with the privilege of extension, for a nominal consideration of one dollar, and there was a provision in the lease that "said land is to be used by lessees as a location for ginning and cotton seed handling purposes," and accordingly a ginning plant was erected on the leased premises and the business was conducted for five years, when the ginhouse was destroyed by fire, but a seed house was not burned, and the lessee after the fire collected full insurance and removed all the machinery which was only slightly damaged to another point, and refused to further occupy the property and continue the business as it had agreed to do, and after two years desertion of the premises the lessees threatened to tear down and remove the seed house, a bill for injunction will lie by the lessor and his wife to prevent the removal of the seed house.

2. Same.

In such case the lessee by refusing for two years to continue the operation of the plant abandoned and forfeited its right of re-entry and removal of the building and forfeited its lease, and the building being a part of the freehold, the title to the same vested in the owners of the soil.

Appeal from the chancery court of Holmes county. Hon. J. F. McCool, Chancellor.

Bill in equity by H. O. Zeigler and wife against the Lexington Compress & Manufacturing Company. From a judgment sustaining a demurrer to the bill, complainants appeal.

The facts are fully stated in the opinion of the court.

Noel, Boothe & Pepper, for appellant.

The lease is null and void as being of a part of the homestead, without the wife joining with the husband in the execution of the instrument.

If the husband could execute a lease to the homestead for ten years, he could lease it for ninety-nine years, practically for a period of time beyond the life of his wife; and if a lease can be executed by the husband without the wife joining with him in the lease for a part of the homestead it follows that he could do so for the entire homestead; and thus deprive the wife of a homestead for an indefinite period, or during her life without her consent and without her joining in the instrument creating such tenure. *Pounds* v. *Clark,* 70 Miss. 263, 14 So. 22 and the decisions in harmony with it have been expressly overruled by *McDonals* v. *Sanford,* 88 Miss. 633.

In the latter case the court held that ''whatever name may be given to the wife's interest in the homestead, whether it be called an estate, or an interest, or a claim, or a right, or a veto power merely, it is such an interest or right as the statute requires to be conveyed by a deed, and a deed to the homestead without the wife joining in the conveyance has been correctly held, in case of *G. & S. I. R. R. Co.* v. *Singleterry,* 78 Miss. 72, to be an absolute nullity.''

In that case it was held that the husband himself was not concluded, as to his own interest even, from bringing the action of trespass to recover damages from the railroad company, for laying its right of way over the land to which the husband had executed a conveyance without the joinder of the wife; the land being homestead property.

Our court also quoted approvingly the case of *Revalk* v. *Kraener,* 68 Am. Dec. 306, a California case, and *Larson* v. *Reynolds & Packard,* 13 Iowa, 579, 81 Am. Dec. 444. That announced precisely the same doctrine. Our court also quotes largely from the opinion of the Iowa

court and we respectfully refer to the opinion so quoted on page 639.

Among other cases cited in *McDonald* v. *Sandford* is the case of *McKenzie* v. *Shows,* 70 Miss. 338, and quotes from it approvingly the following language: "There is no estate in reversion expectant upon which the appellants can enter upon the proper sale of the homestead by the husband and wife jointly, for the reason that the attempted conveyance and incumbrance of the husband alone, in the sale by deed of the timber, was absolutely invalid to convey any right or title. Collins, the purchaser of the timber, acquired nothing by the invalid conveyance from the husband alone. We are not inclined to eat away a wise and most beneficent statute, designed for the welfare and support and comfort of wife and children by ingrafting an exception upon it. The law must be upheld and enforced as written, and this we do by declaring Yawn's deed to the timber of the homestead and incumbrance upon the title as invalid for any purpose."

If the lease had been executed by the wife as well as the husband and was valid in every particular it cannot now be legally enforced by the defendant because they have long since violated its terms, disregarding its purposes and wholly abandoned it.

The seed house and shed which said defendants were enjoined from tearing down and removing is not on the leased premises and the record abundantly shows that said defendants had no right whatever to tear down and remove said buildings and were properly enjoined from so doing.

The demurrer of the defendants, the appellees in this cause, admits the truth of the fact, matters alleged in the amended bill of appellant's and under the law as applied to the allegations of facts contained in the amended bill, not a single one of the four grounds of demurrer is well taken.

*G. A. Wilson,* for appellees.

The brief of appellant's attorneys base errors of the court below on the alleged invalidity of the lease set out in the bill, because it was not executed by the co-complainant's wife, in accordance with the statute on conveyance and incumbrances of homesteads.

Our contention is that it is unnecessary to call in question the legality of the lease in order to decide the want of equity in the old bill and amended bill. Indeed, if it is true in law that the owner (the husband), cannot rent his own land in his one hundred and sixty-acre homestead without the consent of his wife in the manner pointed out in the statute for a sale or incumbrance of the homestead, I hope this court will "put a soft pedal" on such announcement until poor tenants can get their crops and chicken-houses off of homestead lands before they are grabbed by such wives as Mrs. Zeigler is made to appear by her husband's attorney.

The doctrine of fixtures and right to remove is proper to be considered by this court and in fact is the whole question.

We hold that our clients were tenants: Because the husband has the right to use the land in any way he sees fit and to lease or rent it for a reasonable time. Section 2159, Code of 1906.

At the death of the husband the widow would come into actual control but she would not be permitted by a court of equity and good conscience to seize and appropriate the fixtures put on the land by the tenant for his use.

All the law is one way on the subject of right of removal by tenants. It is liberally construed in their favor and this law is familiar to the court. In this case certainly the lease gave us color of title. *Avera* v. *Williams,* 81 Miss. 714. Also the lease certainly shows that we went there in good faith in April, 1904, and put up a valuable gin plant and operated it until August, 1909. The

lease and recitals show that we erected this gin plant between the residence of Mr. Zeigler and his store. Mrs. Zeigler never objected to the erection of the plant or to its operation for over five years. But now she says in her bill she objects to the removal of our seedhouse although she did not object to the removal by us of our engine and boiler.

COOK, J., delivered the opinion of the court.

Appellants, husband and wife, occupied as a homestead a certain tract of land. The husband leased a part of the land to appellee for a term of two years, but the wife did not sign the lease.

It is stated in the bill of complaint filed by the appellants that the purpose of the husband in executing the lease was to obtain for his community a first-class system gin outfit; that the rental of the land was the nominal sum of one dollar, but the real consideration was expressed in this clause of the lease, viz.: "It is understood and agreed that the said Lexington Compress & Oil Mill Company may have the privilege of extension of this lease at expiration of one specified. Said land is to be used by lessees as a location for ginning and cotton seed handling purposes." From the bill we learn that the ginning plant was erected and the business was conducted for five years, when the ginhouse was destroyed by fire, but the seed house was not burned. After the fire, appellee, after collecting full insurance, removed all the machinery, which was only slightly damaged, to the "Delta," and refused to further occupy the property and continue the business as it had agreed to do.

After the removal of the machinery and discontinuance of the business, appellants endeavored to persuade the appellee to rebuild the plant and continue the business, which they refused to do for two years. After this refusal to continue the business, appellants took possession of a certain cotton seed shed, which it is alleged

was erected in part on land of appellants not embraced in the lease, and were using same as a hay barn, when it is alleged appellees were conspiring to go upon the land for the purpose of tearing down and removing the building.

The foregoing is the case made by the bill of complaint, and the prayer was for an injunction to restrain appellees from entering the premises to destroy and remove the building. A demurrer was interposed to this bill, and was sustained by the court.

Did the tenant have the right to remove the building at any time before the expiration of the lease? If this should be answered in the affirmative, does the bill allege a state of facts showing that appellee had surrendered possession; and by refusing for two years to con tinue the operation of the plant did appellee thereby abandon and forfeit its right of re-entry and removal of the building?

The demurrer admits the allegations of the bill, and we think the bill establishes an abandonment and forfeiture of the lease. It is fairly deducible from the bill that appellee undertook to erect a gin and cotton seed handling plant and use the land for this purpose alone, and when it moved its plant and for two years refused to use the land for the purpose intended it thereby forfeited all further rights to go upon the land. It may be conceded, so far as this case is concerned, that appellant, when the fire occurred had the right to remove the building within a reasonable time thereafter; but when it abandoned the possession of the land for two years, and refused longer to use the same for the conduct of the business, this can only be construed as a surrender of the lease. This being true, the building being a part of the freehold, the title to same vested in the owners of the soil.

*Reversed and remanded.*